**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2046
_____

PHILIP BROOKS,

Appellant

v.

WAL-MART STORES, INC.; JOHN DOE; MARY DOE;
ABC BUSINESS ENTITIES;
XYZ CORPORATIONS
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action No. 1:18-cv-01428)
District Judge: Honorable Noel L. Hillman
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 14, 2020

Before:  GREENAWAY, JR., SHWARTZ, and FUENTES, *Circuit Judges*

(Filed: April 13, 2021)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Appellant Philip Brooks appeals the District Court's April 24, 2020 order granting the summary judgment motion of Appellee Wal-Mart Stores, Inc. ("Walmart"). Injuries are always regrettable particularly if preventable. Here, in order to recover for his injuries Brooks had to show a dangerous condition existed and establish that the store knew of the dangerous condition and failed to act. Brooks cannot meet this burden. For these reasons, we will affirm.

## I. BACKGROUND

On July 11, 2016, Brooks visited a Walmart store in Mays Landing, New Jersey. Brooks had shopped at the location many times before and therefore knew the store well. That morning, Brooks acquired a shopping cart, entered the store and located the items he wished to purchase. After grabbing these items, Brooks walked toward the front of the store to check out. While on his way to the checkout area, Brooks proceeded through the men's clothing department. Brooks "turned his shopping cart down an aisle he described as 'tight'" because of "the arrangement of various clothing displays." J.A. 5-6.

Brooks continued down the aisle until he encountered two unaccompanied shopping carts partially blocking his path.[1] Brooks tried to maneuver around the carts.

---

[1] In his brief, Brooks maintains that a "female associate was specifically in the area of the incident – filling a shopping cart with items, which she then left unattended and which blocked [his] lane of travel in a high traffic area." Appellant's Br. 20. Brooks, however, testified: "I don't know whether [the shopping carts] were actually hers or not." J.A. 61.

Brooks successfully finagled his way around the first cart, but, while seeking to maneuver around the second cart, Brooks struck his left foot on a bench used for trying on footwear and injured his toes and foot. Brooks described the shoe bench as about three-and-one-half feet wide and around one-and-one-half feet tall. Brooks does not contend that the bench was blocking the aisle he was walking in. After striking his foot, Brooks continued to the front of the store to report the incident. The store's manager completed an incident report, and Brooks left the store without requiring medical attention.

Brooks initiated an action by filing a complaint in the Superior Court of New Jersey. Brooks's complaint alleged that "[w]hile shopping in the men's department of the store, [he] was caused to strike his left foot on a bench that was sticking out into the aisle which was partially blocked by shopping carts." J.A 33. Brooks thus alleged that Walmart was negligent in permitting "hazards . . . to exist in the aisle while patrons such as [Brooks] were utilizing the same, causing [Brooks] to bump his foot and become injured." J.A. 34.

In February 2018, Walmart removed this case from the Superior Court of New Jersey to the United States District Court for the District of New Jersey. Following the end of discovery, Walmart moved for summary judgment the year after, and the District Court granted the motion. In resolving Walmart's motion, the District Court credited Brooks's proffered version of the incident. The District Court determined that Brooks had not established that Walmart had actual or constructive notice of a dangerous condition on their premises. It noted that "New Jersey courts have held that shoe benches

3

are not inherently dangerous instrumentalities, and when used with due care, the Court cannot conceive how they may be inherently dangerous," and "[t]he same is true for shopping carts." J.A. 18 (first citing *Carney v. Payless Shoesource, Inc.*, No. A-2680-07T2, 2009 WL 425822, at *1-2 (N.J. Super. Ct. App. Div. Feb. 24, 2009); and then citing *Senisch v. Tractor Supply Co.*, No. 1:16–cv–47 (NLH/KMW), 2018 WL 324717, at *7 (D.N.J. Jan. 8, 2018)). The District Court also highlighted that "New Jersey courts hold that 'minor imperfections' or minor defects will not give rise to an actionable claim." J.A. 19 (citing *Chamberlain v. City of Wildwood*, No. A-3424-12T1, 2013 WL 5777832, at *4 (N.J. Super. Ct. App. Div. Oct. 28, 2013); and *Charney v. City of Wildwood*, 732 F. Supp. 2d 448, 456 (D.N.J. 2010)). Thus, the Court held, "[i]n this case, no reasonable jury could find that [Walmart] was negligent in failing to search out and cure a minor defect – a bench that may have been an inch or two out of place." J.A. 19.

The District Court also found that Brooks had not established that Walmart possessed constructive notice of any allegedly dangerous condition. The Court reasoned, "simply explaining that an employee was in the area where an incident occurred, without more, is not enough to establish constructive notice; indeed, such facts do not explain how long the dangerous condition may have existed or that [Walmart] had an opportunity to correct it." J.A. 21. Because the Court found that there was no proof in the record suggesting that the bench was out of place over a long time or that Walmart had a reasonable chance to correct its placement, it rejected Brooks's constructive notice claim.

4

Last, the District Court held that the mode-of-operation doctrine did not apply. Under that doctrine, New Jersey relieves a plaintiff from the burden of proving constructive notice "in circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." *Senisch*, 2018 WL 324717, at *5 (quoting *Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314, 316 (N.J. 2003)). The District Court explained: "New Jersey declines to apply the mode-of-operation doctrine in situations, like the one before this Court, in which a plaintiff is injured by a shopping cart or a shoe bench." J.A. 13 (first citing *Senisch*, 2018 WL 324717, at *7; and then citing *Carney*, 2009 WL 425822, at *1-2).[2] The District Court determined that in Brooks's situation, "a reasonably prudent person would have seen the shoe bench, and therefore, there is no inherent, latent harm requiring application of the mode-of-operation doctrine." J.A. 15. Having found that each of Brooks's claims failed, the Court entered summary judgment for Walmart. This appeal followed.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

---

[2] Indeed, in *Carney*, New Jersey's Appellate Division recognized that "two-foot by two-foot portable shoe benches for use by customers who try on merchandise do not raise a substantial risk inherent in defendant's mode of doing business." 2009 WL 425822, at *2. "Any reasonably prudent person would observe, in light of the dimensions of the benches, their presence in his or her lane of travel." *Id.*

5

We review de novo a district court's disposition of a summary judgment motion. *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en banc). We therefore apply the same standard for summary judgment as the District Court. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 330 (3d Cir. 1995). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).

## III. DISCUSSION

Brooks argues that the District Court erred in determining there were no genuine disputes of material fact about either the alleged dangerous condition at Walmart or whether the store had constructive notice of the alleged dangerous condition. Brooks also challenges the District Court's conclusion that New Jersey's mode-of-operation doctrine did not apply in this case.

### A. DANGEROUS CONDITION AND CONSTRUCTIVE NOTICE

We agree with the District Court's determination that no rational jury could determine that the aisle, shopping carts, or shoe bench at Walmart constituted dangerous conditions that presented an unreasonable risk of harm under New Jersey law.

"To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual

6

damages.'" *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (quoting *Polzo v. Cty. of Essex*, 960 A.2d 375, 384 (N.J. 2008)). "Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." *Nisivoccia*, 818 A.2d at 316 (citations omitted). "The duty of due care requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." *Id.* "Ordinarily an injured plaintiff asserting a breach of that duty must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Id.*

"[P]remise liability . . . is dependent upon injury being caused by a dangerous condition of property, which involves an unreasonable risk of harm." *Longo v. Aprile*, 865 A.2d 707, 710 (N.J. Super. Ct. App. Div. 2004). The dangerous condition "must be inherent in the property." *Weiser v. Cty. of Ocean*, 740 A.2d 1117, 1120 (N.J. Super. Ct. App. Div. 1999). Brooks argues that there is a genuine dispute of material fact as to the existence of a dangerous condition. We disagree. The District Court correctly determined that none of the conditions identified by Brooks—a clothing aisle, shopping carts, or shoe bench—constituted dangerous conditions on Walmart's property and that the store could not have foreseen an unreasonable risk of injuries to customers such as Brooks.

Indeed, Brooks admitted that the unattended shopping carts were not completely blocking the aisle of his travel. Further, the shoe bench Brooks ran into was not blocking the aisle in which he was walking, and Brooks conceded that his own merchandise-filled

7

shopping cart blocked his view of the bench. As the District Court pointed out, such a bench does not raise a substantial risk in Walmart's mode of doing business. And shopping carts do not create a substantial risk of injury when used with due care in a way it is reasonably foreseeable that a person will use them. While Brooks argues that the "cluttered aisle in conjunction with the out of place bench" constituted a dangerous condition, Appellant's Brief 18, no reasonable jury could find that Walmart was negligent in failing to search out and cure a minor defect—a bench that was protruding out "maybe an inch or two" according to Brooks, J.A. 19.

Brooks's constructive notice argument also fails. A defendant has constructive notice of a dangerous condition when it exists "for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." *Troupe v. Burlington Coat Factory Warehouse Corp.*, 129 A. 3d 1111, 1114 (N.J. Super. Ct. App. Div. 2016) (quoting *Parmenter v. Jarvis Drug Stores, Inc.*, 138 A.2d 548, 550 (N.J. Super. Ct. App. Div. 1957)). Brooks argues that the "presence" of a Walmart associate "in the area at the time of the incident" afforded the store constructive notice of the condition of the shopping carts and shoe bench. Appellant's Br. 13. But Brooks specifically explained in his testimony that he "d[id]n't know whether [the carts] were actually [the employee's] or not," that the employee was "not in the aisle," and the employee "was some distance from the carts." J.A. 61, 67. Further, as the District Court explained, there was no proof in the record suggesting that the bench was out of place for a long time or that Walmart had a reasonable chance to correct its placement. Brooks's averments therefore could not establish constructive notice.

## B. MODE-OF-OPERATION DOCTRINE

We also agree that the District Court properly granted summary judgment because Brooks presented insufficient evidence to support invoking the mode-of-operation doctrine.

In New Jersey, "when a substantial risk of injury is inherent in a business operator's method of doing business, the plaintiff is relieved of showing actual or constructive notice of the dangerous condition." *Nisivoccia*, 818 A.2d at 317. "In those circumstances, [the New Jersey Supreme Court] ha[s] accorded the plaintiff an inference of negligence, imposing on the defendant the obligation to come forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard." *Senisch*, 2018 WL 324717, at *5 (quoting *Nisivoccia*, 818 A.2d at 316) (alterations in original).

To benefit from this mode-of-operation doctrine, a plaintiff must show "that the circumstances were such as to create the reasonable probability that the dangerous condition would occur," including "the nature of the business, the general condition of the premises, [and] a pattern of conduct or recurring incidents." *Bozza v. Vornado, Inc.*, 200 A.2d 777, 780 (N.J. 1964). The District Court properly held that the mode-of-operation does not apply in every circumstance, and New Jersey declines to apply the mode-of-operation doctrines in situations like the one before the Court. *See Znoski v. Shop-Rite Supermarkets, Inc.*, 300 A.2d 164, 166 (N.J. Super. Ct. App. Div. 1973) ("We are unable to say that a substantial risk of injury is implicit, or inherent, in the furnishing of shopping carts to patrons by a store proprietor. Shopping carts are not dangerous

9

instrumentalities, and they are uniquely suitable for the purpose for which furnished."); *Senisch*, 2018 WL 324717, at *8 (describing "shoe bench[es]" and "hand truck[s]" as "large object[s]" that "[a] reasonably prudent person would be able to observe . . . if one were left in his or her lane of travel"). The lack of an inherently dangerous condition based on the facts here negated the District Court's need to apply the mode-of-operation doctrine.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the order of the District Court.