818 A.2d 314

KATHERINE NISIVOCCIA AND RAYMOND NISIVOCCIA, PLAIN-TIFFS–APPELLANTS, v. GLASS GARDENS, INC., D/B/A SHOP-RITE OF ROCKAWAY, DEFENDANT–RESPONDENT, AND JOHN DOES 1–4, DEFENDANTS.

Argued October 7, 2002—Decided January 22, 2003.

*Lewis Stein* argued the cause for appellants (*Nusbaum, Stein, Goldstein, Bronstein & Kron,* attorneys).

*Robert Francis Gold* argued the cause for respondent (*Gold & Albanese,* attorneys; *James N. Barletti,* on the briefs).

*Anne P. McHugh* argued the cause for amicus curiae, Association of Trial Lawyers of America–New Jersey (*Pellettieri, Rabstein & Altman,* attorneys).

The opinion of the Court was delivered by

LaVECCHIA, J.

When approaching the checkout lanes in a supermarket, plaintiff Katherine Nisivoccia slipped and fell on some loose grapes lying about. The proofs did not show how the grapes came to be on the floor or how long they had been there. It was undisputed, however, that in the produce area grapes were displayed in open-top, vented plastic bags that permitted spillage. The question before us is whether *Wollerman v. Grand Union Stores, Inc.,* 47 *N.J.* 426, 221 *A.*2d 513 (1966), applied, entitling plaintiff to an inference of negligence because the store should have anticipated that careless handling of grapes was reasonably likely during customer checkout, creating a hazardous condition. The trial court did not allow plaintiff that inference and instead directed a verdict for defendant that the Appellate Division affirmed. We reverse.

## I.

The facts are straightforward. Approximately three feet from the entry of a supermarket checkout aisle, plaintiff slipped when she stepped on a grape with the heel of her right shoe. After she had fallen, she observed at least five other grapes within a three-foot diameter around her. No other grape had been squashed. She and her husband reported the incident to the employee at the checkout register and to the store manager.

Plaintiff filed this complaint in negligence against defendant Glass Gardens, Inc., doing business as Shop–Rite of Rockaway (the store).[1]  At trial, plaintiff and her husband testified to the circumstances involved in the slip and fall.  The defense presented two store employees who were working on the day of the accident, a customer service clerk and the assistant manager.  The customer service clerk recounted that he completed an incident report that day.  However, the report failed to include any description of the accident area or what the post-accident inspection revealed.  The store's assistant manager described the store's method of selling grapes and its floor maintenance program.  The grapes arrive at the store from the wholesaler already packaged in clear plastic bags that are open at the top and have slits for air vents on the sides.  Those bags are then placed in the produce area for display to customers.  The manager acknowledged that grapes may fall onto the store floor during the process of being handled by either customers or store employees and that that tended to happen at the two locations where the grapes were handled most frequently, in the produce aisle and at the checkout area.

In respect of store maintenance, the manager stated that at least one full-time "porter" is on duty during all hours of operation.. The porter is charged with monitoring the facility to identify and clean up spills or debris that may fall on the floor.  All store employees are instructed to be vigilant for spillage or other potential hazards.  If a spill is observed, the employee is required to contact a porter and must remain at the spot until the porter arrives to clean up the material.  Although the manager asserted that typically two part-time porters are on duty during the store's hours of operation, he could not identify the number of porters on duty on the day of the accident.

At the close of testimony, plaintiff requested and was denied an inference of negligence.  The trial court distinguished *Wollerman,*

---

[1] Although plaintiff's husband, Raymond Nisivoccia, sues per quod, we refer to plaintiffs in the singular.

reasoning that the accident here did not occur, as in *Wollerman,* in the supermarket's produce aisle, nor did it occur close enough to the checkout cashier to have constituted part of the self-service operation. The court concluded that a reasonable juror could not find that any specific mode of store operation created a significant risk of harm, and it refused to make the store a general insurer of customer safety.

Defendant was granted a directed no-cause verdict because plaintiff had not produced any evidence of the store's actual or constructive notice of a dangerous condition. The Appellate Division affirmed in an unpublished opinion, and we granted certification, 171 *N.J.* 444, 794 *A.*2d 183 (2002).

## II.

Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation. *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 433, 625 *A.*2d 1110 (1993); *Restatement (Second) of Torts* § 343 (1965). The duty of due care requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe. *O'Shea v. K. Mart Corp.,* 304 *N.J.Super.* 489, 492–93, 701 *A.*2d 475 (App.Div. 1997). Ordinarily an injured plaintiff asserting a breach of that duty must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident. *E.g., Brown v. Racquet Club of Bricktown,* 95 *N.J.* 280, 291, 471 *A.*2d 25 (1984). Equitable considerations have, however, motivated this Court to relieve the plaintiff of proof of that element in circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents. In those circumstances, we have accorded the plaintiff an inference of negligence, imposing on the defendant the obligation to come

forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard.

We first articulated that modification of the cause of action in *Bozza v. Vornado, Inc.*, 42 *N.J.* 355, 359–60, 200 *A.*2d 777 (1964), wherein we approved the rationale of *Torda v. Grand Union Co.*, 59 *N.J.Super.* 41, 45, 157 *A.*2d 133 (App.Div.1959), which had applied that principle. In *Bozza*, the plaintiff, when leaving the counter of a self-service cafeteria, claimed to have slipped on a sticky, slimy substance on the littered and dirty floor. We pointed out that spillage by customers was a hazard inherent in that type of business operation from which the owner is obliged to protect its patrons, and we held that when it is the nature of the business that creates the hazard, the inference of negligence thus raised shifts the burden to the defendant to "negate the inference by submitting evidence of due care." 42 *N.J.* at 360, 200 *A.*2d 777. We further addressed the mode-of-operation rule in *Wollerman, supra,* 47 *N.J.* 426, 221 *A.*2d 513, in which the plaintiff had slipped on a string bean in the produce aisle of a supermarket. We explained in *Wollerman* that the defendant's self-service method of operation required it to anticipate the hazard of produce falling to the ground from open bins because of the carelessness of either customers or employees, imposing upon the defendant the obligation to use reasonable measures promptly to detect and remove such hazards in order to avoid the inference that it was at fault. *Id.* at 429–30, 221 *A.*2d 513.

Our courts have adhered to the mode-of-operation rule since *Wollerman, see, e.g., Craggan v. IKEA USA,* 332 *N.J.Super.* 53, 61–62, 752 *A.*2d 819 (App.Div.2000); *O'Shea v. K. Mart Corp., supra,* 304 *N.J.Super.* at 492–93, 701 *A.*2d 475, and it has been incorporated as well into the Model Jury Charges (Civil), § 5.24B–11 Duty Owed as to Condition of Premises (1970). The Model Charge correctly states the rule that when a substantial risk of injury is inherent in a business operator's method of doing business, the plaintiff is relieved of showing actual or constructive notice of the dangerous condition. The plaintiff is entitled to an

inference of negligence, shifting the burden of production to the defendant, who may avoid liability if it shows that it did "all that a reasonably prudent man would do in the light of the risk of injury [the] operation entailed." *Wollerman, supra,* 47 *N.J.* at 429, 221 *A.*2d 513. Thus, "[a]bsent an explanation by defendants, a jury could find from the condition of the premises and the nature of the business that defendants did not exercise due care in operating the [establishment], and that said negligent operation was the proximate cause of [the] injuries." *Bozza, supra,* 42 *N.J.* at 359, 200 *A.*2d 777. The ultimate burden of persuasion remains, of course, with the plaintiff.

## III.

Applying the foregoing principles to the matter before us, we conclude that plaintiff was entitled to a mode-of-operation instruction to the jury.

■ A location within a store where a customer handles loose items during the process of selection and bagging from an open display obviously is a self-service area. A mode-of-operation charge is appropriate when loose items that are reasonably likely to fall to the ground during customer or employee handling would create a dangerous condition. In *Wollerman,* the location was the produce area. But the same considerations apply to the checkout area of a supermarket. Customers typically unload their carts onto the checkout counter. Droppage and spillage during that process are foreseeable. Indeed, because of the way the grapes were packaged, they could easily have fallen out when accidentally tipped or upended in a shopping cart anywhere in the store. The open and air-vented bags invited spillage. It was foreseeable then that loose grapes would fall to the ground near the checkout area, creating a dangerous condition for an unsuspecting customer walking in that area.

The trial court took a restrictive view of what constituted the "checkout area," concluding that the location of the wayward grapes was too far removed from the actual cashier counter to be

attributable to a mode of operation involving the handling of goods by customers and employees during checkout. The grape on which plaintiff slipped was approximately three feet from the entry to the checkout lanes. The trial court's analysis, however, failed to take into account the fact that grapes can be expected to roll if they fall to the ground. Thus, the dangerous condition caused by stray grapes in the entry area of the checkout lanes was a foreseeable risk posed by the store's mode of operation. "Mode of operation" here includes the customer's necessary handling of goods when checking out, an employee's handling of goods during checkout, and the characteristics of the goods themselves and the way in which they are packaged.

Given the combination of factors, negligence shall be inferred requiring the store to come forward and produce evidence of its due care. The question of the adequacy of the store's efforts to exercise due care was one for the jury. It was error for the court to have entered a directed verdict for defendant. Plaintiff was entitled to have the jury decide the issue of negligence.

### IV.

The judgment of the Appellate Division is reversed and the matter remanded for further proceedings.

LONG, J., concurring.

I agree with the majority's articulation of the "mode of operation" theory of *Wollerman* and its concomitant shifting of the burden of production. I write separately to dispel what I view as possible confusion that could arise from the opinion.

As I read the opinion, it is an affirmation of plaintiffs' interpretation of *Wollerman:* that where a hazardous mode of operation is in place in a supermarket, a party injured anywhere in the store as a result of that mode of operation is entitled to a shift in the burden of production. Here, the "mode of operation" that created the hazard was the use of open-topped, slitted bags to package

produce that was likely to fall onto the floor if the bags were handled or if they spilled accidentally anywhere in the supermarket. Thus, the outer limits of the "checkout" area and the motility of the grapes are essentially irrelevant.

This case no more turns on grapes and the checkout area than *Wollerman* turned on lettuce and the produce department. Both stand for a principle: that when a substantial risk of injury is inherent in the method of operation of a business, the plaintiff is relieved of coming forward with proof of actual or constructive notice of the dangerous condition. The risk of injury that justified relieving the plaintiff of the burden of production in this case was inherent in the packaging of the produce and that was all plaintiffs needed to prove to come under the *Wollerman* umbrella.

*For reversal and remandment*—Chief Justice PORITZ and Justices COLEMAN, LONG, LaVECCHIA, ZAZZALI and ALBIN—6.

*Opposed*—None.