NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1687-14T4

ANNETTE TROUPE,

     Plaintiff-Appellant,

v.

BURLINGTON COAT FACTORY
WAREHOUSE CORPORATION,

     Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 26, 2016**
>
> **APPELLATE DIVISION**

Submitted December 7, 2015 — Decided January 26, 2016

Before Judges Sabatino and Suter.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-8271-12.

Kelso and Bradshaw, attorneys for appellant (Patrick J. Bradshaw, on the brief).

Reger Rizzo & Darnall, LLP, attorneys for respondent (Richard M. Darnall and Thomas M. Krick, on the brief).

The opinion of the court was delivered by

SUTER, J.S.C. (temporarily assigned).

Annette Troupe appeals the dismissal of her slip and fall complaint following a motion for summary judgment by Burlington Coat Factory Warehouse, Inc. (Burlington).  We affirm because, lacking any actual or constructive notice of the dangerous

condition, Burlington did not breach the duty of care to plaintiff as its invitee. We hold as well, by applying the Supreme Court's recent decision in <u>Prioleau v. Kentucky Fried Chicken, Inc.</u>, 223 <u>N.J.</u> 245 (2015), that the mode-of-operation rule does not apply here, where the berry on the floor that apparently caused the fall was not significantly connected with any self-service component of Burlington's business.

I.

On the afternoon of April 22, 2011, plaintiff Annette Troupe and her sister entered Burlington Coat Factory in the Middlesex Mall and proceeded to the "Baby Depot" section in the back of the store. Plaintiff's right foot slipped on an unseen berry in the aisle, causing her to fall and seriously injure her knee and back. Investigation revealed there was no other fruit in the vicinity and no one eating fruit. The berry left a tell-tale purplish smear along the floor extending from where Troupe started to slip to where she came to rest, leaving a "little seed." Troupe filed suit in December 2012.

Discovery revealed that an outside service cleaned the store every morning before it opened. Aside from that, there was no periodic sweeping of the floors, but employees who dropped or saw something on the floor would pick up what was there. The baby department required about the same amount of

cleaning as the other departments, according to the former store manager.

Troupe's liability expert issued a report that was critical of Burlington for its lack of periodic inspections. He said because Burlington sold baby and children's clothing, "Burlington . . . should have foreseen, that at various times those babies and children would be doing the things that babies and children normally do, including eating snacks, drinking drinks, and dropping things onto the floor." This posed a "substantial risk of injury." The expert opined that Burlington's failure to inspect was a "substantial contributing cause of Ms. Troupe's fall."

Burlington's motion for summary judgment was granted by Judge Arthur Bergman, who found Burlington had not breached its duty of care because there was no evidence of actual or constructive notice by Burlington of the berry prior to Troupe's slip and fall. He also rejected application of the mode-of-operation rule because the berry "wasn't anything that they're selling." Troupe appeals from that order.

## II.

Where there is an appeal from a summary judgment decision, we review the decision de novo, meaning that we apply the same standards used by the trial judge. W.J.A. v. D.A., 210 N.J. 229,

237 (2012). The question then is whether the evidence, when viewed in a light most favorable to the non-moving party, raises genuinely disputed issues of fact sufficient to warrant resolution by the trier of fact or whether the evidence is so one-sided that one party must prevail as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Applying this standard, the record amply supports Judge Bergman's finding there were no genuine issues of fact about Burlington's actual or constructive notice of the dangerous condition prior to Troupe's fall. Further, the judge correctly decided, as a matter of law, that the mode-of-operation rule does not apply to these facts.

A.

Under New Jersey law, "[b]usiness owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." Nisivoccia v. Glass Garden, Inc., 175 N.J. 559, 563 (2003); Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993). The duty of due care to a business invitee includes an affirmative duty to inspect the premises and "requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions

that would render the premises unsafe." <u>Nisivoccia</u>, <u>supra</u>, 175 <u>N.J.</u> at 563.

Owners of premises are generally not liable for injuries caused by defects of which they had no actual or constructive notice and no reasonable opportunity to discover. <u>Ibid.</u> For that reason, "[o]rdinarily an injured plaintiff . . . must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." <u>Ibid.</u>

A defendant has constructive notice when the condition existed "for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." <u>Parmenter v. Jarvis Drug Stores, Inc.</u>, 48 <u>N.J. Super.</u> 507, 510 (App. Div. 1957). Constructive notice can be inferred in various ways. The characteristics of the dangerous condition giving rise to the slip and fall, <u>see</u>, <u>Tua v. Modern Homes, Inc.</u>, 64 <u>N.J. Super.</u> 211, 220 (App. Div. 1960) (finding constructive notice where wax on the floor had hardened around the edges), or eyewitness testimony, <u>see</u>, <u>Grvanka v. Pfeifer</u>, 301 <u>N.J. Super.</u> 563, 574 (App. Div. 1997), <u>certif. denied</u>, 154 <u>N.J.</u> 607 (1998) (finding constructive notice where eyewitness noted the light had been out for a while) may support

an inference of constructive notice about the dangerous condition.

Here, the trial court was correct that Troupe did not show there was actual or constructive notice of the dangerous condition of the premises prior to her fall. There was no proof Burlington or any employee had actual knowledge about the berry on the floor. There were no eyewitnesses and nothing about the characteristics of the berry that would indicate how long it had been there. There were no other berries in the vicinity. No one was found to have been eating berries in the area. Without actual or constructive notice of the dangerous condition, the trial judge was correct that Burlington did not breach its duty to Troupe.

B.

Troupe contends the trial court erred in not applying the mode-of-operation rule because "the mode-of-operation that created the hazard was the lack of any periodic inspection of the floors during the business shopping day." Most recently, the Court has clarified the mode-of-operation rule in Prioleau, supra, 223 N.J. at 262-63. Prioleau involved a slip and fall near the bathroom at a Kentucky Fried Chicken restaurant on either grease tracked from the kitchen by employees or water tracked into the store by customers on a rainy day. Id. at 249.

The trial record established that Prioleau's slip and fall was "unrelated to any aspect of defendants' business in which the customer foreseeably serves himself or herself, or otherwise directly engages with products or services, unsupervised by an employee." Ibid. The Court held it was reversible error to charge the jury on the mode-of-operation rule where there was no connection between the slippery condition of the floor and the self-service component of the business. Ibid.

In our case, Troupe encourages us to expand the mode-of-operation rule beyond the narrow circumstances to which it has been held to apply, claiming it should apply where the mode of operation has to do with the store's cleaning schedule because it was foreseeable that food items would be brought into the children's department and then dropped on the floor by parents or children. We decline to do so because this misconstrues the rule in a manner that is inconsistent with Prioleau.

To begin with, the mode-of-operation rule is a "special application of foreseeability principles" because of the risks posed by self-service and "not a general rule of premises liability." Id. at 338. When the rule applies, it "relieves the plaintiff of the burden of proving actual or constructive notice of the dangerous condition." Ibid. It "gives rise to an inference of negligence, shifting the burden of production to

the defendant, who may avoid liability if it shows that it did all that a reasonably prudent man would do in the light of the risk of injury the operation entailed." Ibid. (quotations and alterations omitted). However, "the mode-of-operation doctrine has never been expanded beyond the self-service setting, in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk." Id. at 337-38. The Court observed that what is important is "a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." Ibid.

In applying these principles, we agree with Judge Bergman the mode-of-operation rule does not apply to the facts in this case. Here, the accident did not involve any self-service component of Burlington's business. The slip and fall occurred in an aisle, not in an area of clothing racks or "facilities traditionally associated with self-service activities." There was no demonstrable nexus between the self-service component of Burlington's business, namely selling clothes and other non-food items, and the risk of a customer slipping on a berry in the aisle. See Arroyo v. Durling Realty, 433 N.J. Super. 238, 246 (App. Div. 2013) (rejecting a plaintiff's mode-of-operation

theory of liability where the nexus between plaintiff's fall outside of a convenience store on a discarded phone card and the store's self-service rack offering such cards for sale was "extremely attenuated"). Troupe did not show that the fruit had anything to do with Burlington's business.

Troupe's expert report is not illuminating because it does not address the mode-of-operation rule as our Supreme Court has described it in Prioleau. Mode-of-operation liability is not created merely because a store's cleaning schedule is allegedly inadequate. Instead, such a theory of liability requires that the dangerous condition arise from a self-service characteristic of the store's operations. Prioleau, supra, 223 N.J. at 337-38.

To decide this case, we do not need to predict how the mode-of-operation rule will be applied to the myriad of future cases involving businesses that have self-service components. For our decision, because the berry in the children's department aisle had no demonstrable connection with any aspect of Burlington's self-service business, the rule simply does not apply. See Nisivoccia, supra, 175 N.J. at 565 (finding mode-of-operation instruction appropriate where customer slipped on grape near checkout in supermarket that sold grapes in plastic bags open at the top).

The Supreme Court has given us the principles that are to guide us in our application of the mode-of-operation rule. Troupe proposes an expansion that would swallow the rule by, in effect, shifting the burden of production to self-service businesses to show what conduct by their patrons was not foreseeable. However, for the rule to apply as the Court has explained, it is the patron who must first show a clear nexus between the self-service component of the business and "a risk of injury in the area where the accident occurred." Id. at 262. That nexus was not shown here, which precludes application of the mode-of-operation rule.

Because Troupe failed to show Burlington had actual or constructive notice of the berry in the aisle, and because the mode-of-operation rule does not apply, the trial court was correct in granting Burlington's motion for summary judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1687-14T4