**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2614
_____

DONNA LAYDEN,

Appellant

v.

TARGET CORP; NU-ROSE RLTY
JOHN DOES, 1-10
(fictitious names, true names presently unknown);
ABC-XYZ CORPS.
(fictitious names, true names presently unknown)
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 3-15-cv-03467)
District Judge:  Hon. Brian R. Martinotti

Submitted under Third Circuit L.A.R. 34.1(a)
April 4, 2019

Before:  CHAGARES and HARDIMAN, Circuit Judges, and GOLDBERG, District
Judge[*]

(Filed April 17, 2019)

---

[*] The Honorable Mitchell S. Goldberg, United States District Judge of the United States
District Court for the Eastern District of Pennsylvania, sitting by designation.

_____

OPINION[+]

_____

CHAGARES, Circuit Judge.

Donna Layden slipped and fell in Target and filed suit for negligence. The District Court granted summary judgment to Target after discovery, concluding that Layden failed to raise a genuine dispute that Target had notice of a dangerous condition causing her fall or to prove that notice was not required. We agree and will affirm.

I.

Layden visited the Target in Middletown, New Jersey, on April 7, 2014.[1] She testified that she took a shopping cart up the main store aisle to the bedding section, found the merchandise she wanted (a comforter for her granddaughter), and carted it to a price scanner in the main aisle. Then, she testified, "I went to go lift the comforter out of the cart and my foot slipped out from under me and I went down." Joint Appendix ("JA") 76. She saw for the first time "a piece of small plastic hanger" on the floor. JA 82, 87. Then she left the store.

The next day, Layden returned to the store and reported the fall to a Target employee, Diana DeMarco. DeMarco completed a guest incident report, which she and Layden signed. On it, Layden stated, "At the scanner, my right foot stepped on something and it scooted out from under my foot." JA 62, 88. Layden reported that the

[+] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.
[1] We write only for the parties and so recite just those facts necessary to our disposition.

2

cause of the incident was an "unknown object (tiny) on the floor" — a "tiny piece of plastic." JA 62. When DeMarco looked that day, the "object [was] gone." JA 64, 123. DeMarco and another Target employee viewed the previous day's surveillance video showing the main aisle's price scanner from 12:00 p.m. to 1:30 p.m. They saw one patron use the scanner at 12:41 p.m., but no one fall — so they preserved only the video from 12:41 p.m. to 12:45 p.m.

A week or more later, Layden's daughter-in-law went to the Middletown Target to try to find a piece of plastic like the one Layden fell on. She brought back a curved plastic piece of about two inches that "looked like a little hanger," which she had removed from a baseball cap. JA 84–85, 91–92, 94–95. Layden said that the piece she fell on was "similar" but "white and probably a little bigger." JA 96–97; see also JA 85. Months later, Layden's daughter-in-law took a different "little white hooked hanger" "from something that was hanging up" at Target, which Layden said "looked more like" the piece she tripped on, though "she [couldn't] be specific." JA 101–02. Layden produced a photograph of a plastic piece similar to the one she tripped on:



JA 104–05.

Target uses various plastic hangers and hooks. DeMarco testified that clothing comes with "little plastic hanger hooks" that secure the clothes to a hanger. JA 172–73, 178, 231. They are clear or white "'U' shaped plastic piece[s] about an inch in length." JA 172, 231. Target employees remove these plastic pieces and put them in the trash when they put the merchandise on the clothing racks. Other "little plastic hooks" come "pre-hung" on merchandise such as hats, gloves, scarves, and shower curtains. JA 129, 190, 194. Target employees also called them "little plastic hangers," "quarter-sized hangers," and "hook-looking device[s]." JA 137, 190, 194. They are "attached to the item[s]," "keep[] [the items] on the hanger," and affix price tags. JA 137–39. Merchandise and plastic hooks are "held together with a little plastic . . . tie." JA 129. These plastic hooks are not removed to display, try on, or purchase the merchandise. Instead, "typically, when a customer decided they're ready to wear [the merchandise], they cut it" off. JA 139. A Target employee testified, however, that, "[i]f a member holds it, or it gets stuck on something else, it could easily rip off." JA 129. But the same employee also testified that "[t]hey could come off, but forcefully. It's not easy. You'd probably put a hole in the product." JA 137–38. These plastic pieces are similar to that in Layden's photograph, but different in size, color, and exact shape.

Layden filed a lawsuit for negligence against Target in New Jersey state court, which Target removed to the District Court for the District of New Jersey. After discovery, Target moved for summary judgment. The District Court granted that motion. Layden timely appealed.

4

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332.  We have appellate jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over the District Court's grant of summary judgment.  Adams v. Governor of Del., 914 F.3d 827, 833 n.18 (3d Cir. 2019).  Summary judgment is appropriate when there is no genuine dispute of material fact for trial and the movant is entitled to judgment as a matter of law, viewing the facts in the light most favorable to the nonmoving party and drawing all inferences in its favor.  Fed. R. Civ. P. 56(a); Daubert v. NRA Grp., LLC, 861 F.3d 382, 388–89 (3d Cir. 2017).

## III.

Taking the facts in the light most favorable to Layden, we will assume that she slipped on a small plastic hook of the type shown in the photograph she produced.  Even so, however, Layden fails to raise a genuine dispute that Target had actual or constructive notice that the hook was on the ground or to demonstrate that notice was not required.

## A.

Under New Jersey law,[2] business owners owe invitees a duty of reasonable care to guard against dangerous conditions about which they know or should have known.  Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110, 1113 (N.J. 1993).  "Ordinarily an injured plaintiff asserting a breach of that duty must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous

---

[2] The parties agree that New Jersey law applies to this case, as do we.

5

condition that caused the accident." Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314, 316 (N.J. 2003) (citing Brown v. Racquet Club of Bricktown, 471 A.2d 25, 30 (N.J. 1984)).

Layden argues only constructive notice.  She does not argue, and there is no evidence, that Target actually knew the plastic hook was on the floor.  To prove constructive notice, she must show that the plastic hook had lain on the floor "for such a length of time that [Target] should have known of its presence." Bozza v. Vornado, Inc., 200 A.2d 777, 779 (N.J. 1964).  She does not.  No one saw the plastic hook but Layden, after her fall.  See, e.g., Troupe v. Burlington Coat Factory Warehouse Corp., 129 A.3d 1111, 1114 (N.J. Super. Ct. App. Div. 2016) (affirming summary judgment where there were no eyewitnesses to the condition).  No demonstrated characteristics of the plastic hook suggest that it had lain on the floor for an unreasonably long time — there is no evidence that the hook was dirty, or stepped on, or dusty, for example.  See, e.g., id. (affirming summary judgment where there was "nothing about the characteristics of the berry [causing the fall] that would indicate how long it had been there"); cf. Milacci v. Mato Realty Co., 525 A.2d 1120, 1122 (N.J. Super. Ct. App. Div. 1987) (finding that an "accumulation of sand and dirt" suggests the condition existed for some time).  Layden arrived at the store around 12:00 p.m., Target employees watched surveillance video beginning at 12:00 p.m., and Layden fell at 12:30 p.m.  A factfinder could reasonably infer that the hook lay on the ground for half an hour — but no evidence supports Layden's hypothesis that the hook fell before the store opened.

Layden argues that she would have that evidence if Target had not destroyed nearly all the day's surveillance video. She requested an adverse spoliation inference, which the District Court denied. We review that denial for abuse of discretion, see, e.g., Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018), and conclude that it was not. For an adverse inference to be drawn, "it must appear that there has been an actual suppression or withholding of the evidence; no unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 96 (3d Cir. 1983). The Target employees who viewed the video saved the portion they thought relevant — the only portion that showed anyone using the scanner, they say — and the rest of the day's surveillance video was preserved for 30 days under Target policy. Layden's attorney requested its continued preservation only after that time had passed. The District Court acted within its discretion to conclude that "the destruction was a matter of routine with no fraudulent intent." Id. (citation omitted).

Layden fails to offer evidence from which a reasonable factfinder could conclude that Target had actual or constructive notice of the condition that caused her injury.

B.

Layden offers two ways that her claim could proceed without proving notice. Neither is persuasive.

First, she claims that Target caused the plastic hook to fall and a showing of notice is not required when the defendant caused the hazard. There is no direct evidence that

7

Target caused the hook to fall. Layden instead points to DeMarco's testimony that some hangers are removed by Target employees before shelving and handled only by Target employees. This, she argues, is circumstantial evidence that an employee dropped the plastic hook she slipped on. But the "little plastic hanger hooks" that DeMarco was discussing were the "'U' shaped plastic piece[s] about an inch in length that [are] used to secure clothes onto a hanger" and "not the plastic piece produced by the plaintiff" — that is, "the hook that is affixed to a product and used to hang it." JA 231. So that testimony is immaterial. Plastic hooks of the sort that caused Layden's fall are not routinely removed or wholly handled by Target employees — in fact, Layden's daughter-in-law went to Target and removed one for her. Layden fails to raise a genuine dispute as to whether Target caused the condition.

Second, she argues that Target's mode of operation relieves her obligation to prove notice. In New Jersey, "when a substantial risk of injury is inherent in a business operator's method of doing business, the plaintiff is relieved of showing actual or constructive notice of the dangerous condition." Nisivoccia, 818 A.2d at 317. To benefit from this mode-of-operations doctrine, a plaintiff must show "that the circumstances were such as to create the reasonable probability that the dangerous condition would occur," including "the nature of the business, the general condition of the premises, [and] a pattern of conduct or recurring incidents." Bozza, 200 A.2d at 780. "'Mode of operation' . . . includes the customer's necessary handling of goods . . . , an employee's handling of goods . . . , and the characteristics of the goods themselves and the way in which they are packaged." Nisivoccia, 818 A.2d at 318.

8

Layden relies solely on Target's "self-service business model." Layden Br. 23, 25–26. But more is required: she must also show a "nexus between the self-service aspect of defendant's business and the plaintiff's injury." Prioleau v. Ky. Fried Chicken, Inc., 122 A.3d 328, 337 (N.J. 2015); see also Troupe, 129 A.3d at 1116 (affirming summary judgment because "for the [mode-of-operations] rule to apply as the [New Jersey Supreme] Court has explained, it is the patron who must first show a clear nexus"). The District Court determined that she did not, and we agree. She offers no evidence that "the general condition of the premises" corroborates that Target's self-service operations created injury risks. Bozza, 200 A.2d at 779–80 ("[T]here were also drippings, paper straw holders, napkins and dirt on the floor."); see also Nisivoccia, 818 A.2d at 315 ("After she had fallen, she observed at least five other grapes within a three-foot diameter around her."). Layden identifies no "pattern of conduct or recurring incidents" from fallen plastic hooks. Bozza, 200 A.2d at 780. On the contrary, a Target employee testified that she recalled and had heard about no previous such falls.

And Layden makes no argument about the "characteristics of the goods themselves and the way in which they are packaged." Nisivoccia, 818 A.2d at 317–18 ("Indeed, because of the way the grapes were packaged, they could easily have fallen out when accidentally tipped or upended in a shopping cart anywhere in the store. The open and air-vented bags invited spillage."); see also Wollerman v. Grand Union Stores, Inc., 221 A.2d 513, 514 (N.J. 1966) ("When greens are sold from open bins on a self-service basis, there is the likelihood that some will fall or be dropped to the floor."); Bozza, 200 A.2d at 781 ("Although the business operation was self-service and was described as

9

'very busy,' defendants supplied no lids on the beverage containers, and did not require the use of trays."). Target customers serving themselves encounter fixed plastic hooks designed to be cut off after purchase, at home. Customers can remove these hooks in the store — Layden's daughter-in-law did, and they could "easily rip off" when they "get[] stuck on something else," JA 129 — but Layden identifies no aspect of their characteristics or packaging that "invited" removal so that "a substantial risk of injury is inherent in" Target's use of them, Nisivoccia, 818 A.2d at 317. That makes Layden's case unlike O'Shea v. K Mart Corp., 701 A.2d 475 (N.J. Super. Ct. App. Div. 1997). Layden calls O'Shea virtually indistinguishable, but it dealt with heavy unsecured golf bags displayed on a shelf five feet high, which customers were "expected and indeed invited to handle and examine" — "to remove them from where they stand and . . . then to put them back." Id. at 477. These hooks did not similarly invite removal.

Because Layden does not show a nexus between her injury and Target's mode of operations, the lack of evidence of actual or constructive notice is fatal to her claim.

IV.

For these reasons, we will affirm the grant of summary judgment to Target.