**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5538-17T1

JACELIO MARIM and KEILA
MARIM, his wife,

     Plaintiff-Appellants,

v.

NEWARK PUBLIC SCHOOLS,
CITY OF NEWARK, ST. STEPHAN'S
UNITED CHURCH, and ST.
STEPHAN'S GRACE CO.,

     Defendants,

and

219-221 FERRY STREET, LLC,

     Defendant-Respondent.

_____

Argued October 17, 2019 – Decided December 17, 2019

Before Judges Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1336-16.

Nabil Nadim Kassem argued the cause for appellants (Kassem & Associates PC, attorneys; Nabil Nadim Kassem and Dominique Carroll, on the brief).

Tracey Alfano argued the cause for respondent (Gregory P. Helfrich & Associates, attorneys; Tracey Alfano, on the brief).

PER CURIAM

In this slip and fall case, plaintiffs Jacelio and Keila Marim, husband and wife, appeal from the July 6, 2018 Law Division order granting summary judgment to defendant 219-221 Ferry Street, LLC (Ferry Street), and dismissing all claims against defendant with prejudice. We affirm.

The facts, when viewed most favorably to plaintiffs, Brill v. Guardian Life Insurance Company of America, 142 N.J. 520, 523 (1995), reveal that at approximately 8:00 a.m. on February 22, 2014, after leaving his doctor's office, Jacelio[1] slipped and fell on the sidewalk in front of property located at 15 to 19 Wilson Avenue in Newark, as he reached into his parked car to retrieve a briefcase. At his deposition, Jacelio testified that he believed he slipped on black ice, which appeared to be "new." Although Jacelio stated the ice "looked like [it] had been there since it had frozen in the evening[,]" he admitted he did

---

[1] We refer to plaintiffs by their first names to avoid any confusion caused by their common surname and intend no disrespect by this informality.

not know how long the ice had been there because he was not familiar with the area. Further, Jacelio described the day as "clear" and the temperature as "very cold," stating "it must have been below zero." He explained it "had snow[ed] about two days before" but "the snow had melted" because "it had gotten very warm" "at night." According to Jacelio, although the street leading to the sidewalk "was clean[,]" the sidewalk "was covered" with ice.

When Jacelio fell, he landed on his "left side." He heard a "crack" and noticed that his left "arm was turned the opposite way." Disoriented and in pain, Jacelio stood up after about ten seconds, and started walking away from his car. A good Samaritan who had witnessed the fall stopped Jacelio and told him to sit down and wait for an ambulance. When the ambulance arrived, paramedics transported Jacelio to the hospital where he complained of pain in his left arm and neck. As a result, doctors performed emergency surgery to treat Jacelio's broken arm. Subsequently, despite physical therapy, Jacelio underwent a second surgery on his arm because he continued to experience pain and swelling. Following the second surgery, although there was some improvement, Jacelio reported he continued to experience pain, and had limited mobility and sensation in his left arm which prevented him from exercising, swimming, and engaging in other activities he previously enjoyed.

A-5538-17T1

Following the accident, plaintiffs filed an amended five-count complaint against Ferry Street, Newark Public Schools (NPS), the City of Newark,[2] St. Stephan's United Church, St. Stephan's Grace Co.,[3] and other fictitious defendants. In the complaint, plaintiffs alleged defendants were "responsible for maintaining the [p]remises where [Jacelio] was injured," and "breached their duty of care to [Jacelio] by negligently . . . failing to . . . remove and/or remediate any and all hazardous condition(s), which they permitted to exist[,]" after "having notice of the . . . condition." Specifically, the complaint alleged that "[d]efendants were responsible for . . . removal of ice, black ice, and/or snow[,]" but "negligently . . . permitted ice, black ice and/or snow to accumulate upon the [p]remises," and "failed to remove the same and/or give proper notice and/or warning of the hazardous condition(s)," as a result of which Jacelio fell and sustained "severe, painful and permanent personal injuries."

After discovery was completed, Ferry Street moved for summary judgment, asserting the evidence in the record, including Jacelio's deposition testimony, demonstrated that the slip and fall did not occur "on any part of the

[2] By court order, the City of Newark was subsequently dismissed from the case.

[3] The disposition of St. Stephan's United Church and St. Stephan's Grace Co. is unclear in the record.

A-5538-17T1

sidewalk abutting [Ferry Street's] property." Accordingly, Ferry Street asserted it had "no liability," "was not negligent and breached no duty to plaintiff." Subsequently, NPS moved for summary judgment on similar grounds.[4] In addition, NPS asserted that "[l]ocation aside," there was "no proof in the record that NPS had notice of the alleged icy condition." According to NPS, "[t]he only discovery exchanged related to weather [was] data from the date of [the] accident, but that data show[ed] temperatures above freezing for the entire [twenty-four] hour period, with no precipitation[,]" and "[t]here [was] nothing in the record establishing what the weather was like in the days prior to the accident." Further, NPS asserted "plaintiff[s] ha[d] no climatological expert to interpret the data" to "establish ground conditions, including any melting/refreezing[,]" in order to "establish that NPS knew or should have known of the alleged condition." Plaintiffs opposed both motions, asserting that several genuine issues of disputed fact existed based on the parties' conflicting versions of the exact location and cause of the fall.

On July 6, 2018, during oral argument on the motions, plaintiffs' counsel conceded that Jacelio did not fall in front of NPS' property, as the school was

_____

[4] NPS also invoked immunity under the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3.

located "further down the block" on Wilson Ave. Instead, plaintiffs asserted Jacelio "land[ed] . . . right in front of [Ferry Street's] property around 19 Wilson Avenue." The motion judge granted summary judgment to NPS based on plaintiffs' counsel's concession, plaintiffs' failure "to establish adequate notice," and other reasons not pertinent to this appeal. As to Ferry Street's motion, Ferry Street's attorney adopted NPS' notice argument, asserting "if there [was] no notice with respect to [NPS]," then "there [was] no notice with respect to [Ferry Street] either." In contrast, plaintiffs' counsel asserted that Ferry Street took "no action" despite having "[forty-eight] hours to try and alleviate the . . . condition on the sidewalk" based on Jacelio's deposition testimony that it had snowed two days earlier.

In an oral decision, the judge rejected plaintiffs' contention and granted Ferry Street's motion. The judge posited that assuming Jacelio fell on Ferry Street's property, because "there [was] no actual notice[,]" the issue was whether there was "enough information available to [Ferry Street] prior to the accident that would have required [it] to take reasonable steps to alter the condition of the sidewalk to make it more safe for pedestrians." The judge explained that in making that determination, "you have to be able to show when the ice first developed, [and] how long it was there" because "once notified" or "put on

notice of a dangerous condition," a commercial landowner has "a reasonable period of time to address it."

Reviewing the evidence, the judge recounted that the accident occurred following "a [7:00] a.m. doctor's appointment on a Saturday morning[,]" and "the climate evidence" showed that "in the [twenty-four] hour period beforehand[,] the temperatures did not go below freezing[.]" Further, according to the judge, Jacelio "did testify . . . that the ice looked new[,]" and "that he wasn't sure how long the ice had been there." The judge concluded that, viewing the evidence most favorably for plaintiffs, Jacelio's testimony "coupled with the evidence of the actual weather conditions leading up to the date in question . . . simply belie[d] this idea that there was ice formed in sufficient time to put the property owners on notice that they had to take care of a dangerous situation." The judge entered a memorializing order and this appeal followed.

On appeal, plaintiffs argue that because Ferry Street "failed to brief the issue of notice in its moving papers," its "argument regarding notice should have been deemed waived as a matter of law[,]" and the motion judge erred in "consider[ing] the issue of notice as to [Ferry Street]" and "grant[ing] the final relief" on that basis. Plaintiffs argue further that "even if properly raised," the "issue of notice and reasonableness" are "question[s] of fact for the jury, not the

judge." Finally, plaintiffs assert that Ferry Street "failed to remove all genuine issues of material fact regarding notice especially in light of [Jacelio's] uncontroverted testimony that there was a significant snow event two . . . days prior to the [a]ccident," and the judge "erred in granting summary judgment to [Ferry Street]" on this record. We disagree.

We review a grant of summary judgment applying the same standard used by the trial court. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.
>
> [Ibid. (quoting R. 4:46-2(c)).]

If there is no genuine issue of material fact, we must "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

"[T]he movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'[.]" Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998) (quoting Brill, 142 N.J. at 529-30). On the other hand, assertions that are unsupported by evidence "[are] insufficient to create a genuine issue of material fact." Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015) (alteration in original) (quoting Heyert v. Taddese 431 N.J. Super 388, 414 (App. Div. 2013)). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)).

> The question then is whether the evidence, when viewed in a light most favorable to the non-moving party, raises genuinely disputed issues of fact sufficient to warrant resolution by the trier of fact or whether the evidence is so one-sided that one party must prevail as a matter of law.
>
> [Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 601 (App. Div. 2016) (citing Brill, 142 N.J. at 540).]

"The practical effect of [Rule 4:46-2(c)] is that neither the motion court nor an appellate court can ignore the elements of the cause of action or the

9

evidential standard governing the cause of action." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). In that regard, pertinent to this appeal, in order to establish a prima facie case of negligence, a plaintiff must establish: (1) a duty of care; (2) breach of that duty; (3) proximate cause; and (4) damages. Filipowicz v. Diletto, 350 N.J. Super. 552, 558 (App. Div. 2002). "Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003). "The duty of due care to a business invitee includes an affirmative duty to inspect the premises and 'requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe.'" Troupe, 443 N.J. Super. at 601 (quoting Nisivoccia, 175 N.J. at 563).

By extension, "[c]ommercial landowners are responsible for maintaining the public sidewalks abutting their property in a reasonably safe condition" and "may be liable to a pedestrian who is injured as a result of a dangerous condition irrespective of the fact that nature or some third person caused the condition." Mirza v. Filmore Corp., 92 N.J. 390, 394-95 (1983) (citing Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 157 (1981)). "No functional basis exists to differentiate" or "apply a different standard of conduct when a dangerous

situation arises" from "an accumulation of snow or ice" or "from other hazards." Id. at 395. Thus, an abutting commercial owner's responsibility to maintain a public sidewalk in reasonably good condition "includes removal or reduction of the hazard of snow and ice dependent upon the standard of care of a reasonably prudent person under the circumstances." Id. at 400. Indeed, "many municipalities have adopted ordinances that require snow removal." Id. at 395.

However, "[t]he abutting commercial owner's responsibility arises only if, after actual or constructive notice, he has not acted in a reasonably prudent manner under the circumstances to remove or reduce the hazard." Ibid. Because "[o]wners of premises are generally not liable for injuries caused by defects of which they had no actual or constructive notice and no reasonable opportunity to discover[,]" "'[o]rdinarily an injured plaintiff . . . must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident.'" Troupe, 443 N.J. Super. at 601-02 (alternation in original) (quoting Nisivoccia, 175 N.J. at 563).

Constructive notice is established with proof that the condition existed "for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." Id. at 602 (quoting Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)).

11

"Constructive notice can be inferred in various ways." Ibid. "The characteristics of the dangerous condition giving rise to the slip and fall or eyewitness testimony may support an inference of constructive notice about the dangerous condition." Ibid. (citations omitted). See Tua v. Modern Homes, Inc., 64 N.J. Super. 211, 220 (App. Div. 1960) (finding constructive notice where wax on the floor had hardened around the edges); Grzanka v. Pfeifer, 301 N.J. Super. 563, 574 (App. Div. 1997) (finding constructive notice where eyewitness noted the light had been out for a while).

Having carefully reviewed plaintiffs' arguments in light of the record and applicable legal principles, we affirm the July 6, 2018 order. We agree with the motion judge's conclusion that there was no genuine issue of material fact with respect to whether Ferry Street had actual or constructive notice of the icy condition prior to Jacelio's fall. In Mirza, the slip and fall plaintiff produced sufficient evidence of the defendant commercial landowner's knowledge of the icy sidewalk to withstand summary judgment because "[i]t had snowed three or four days before [the fall,]" "it had also snowed during the night[,]" and "[t]he defendant had inspected the sidewalk but had neither removed the snow that had fallen initially, nor attempted to remove or lessen the danger when the snow had become ice." 92 N.J. at 393.

Here, as the judge explained, there was no actual notice to Ferry Street and no evidence to show that the ice had formed on the sidewalk long enough for Ferry Street to have constructive notice that there was a dangerous condition that required rectifying. In fact, the evidence showed the direct opposite. Without actual or constructive notice of the dangerous condition, the judge was correct that Ferry Street did not breach its duty to Jacelio. Plaintiffs' contention that Ferry Street waived the notice issue is "without sufficient merit to warrant discussion in a written opinion." R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5538-17T1