**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3048-23

GABRIELA MIRTHA
TISCORNIA SOSA,

     Plaintiff-Appellant,

v.

DEVILS ARENA
ENTERTAINMENT,
LLC, and ABM INDUSTRIES,
INC.,

     Defendants-Respondents.

_____

Submitted May 8, 2025 – Decided May 15, 2025

Before Judges Mawla and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0307-23.

Icaza, Burgess and Grossman, PC, attorneys for appellant (Juan L. Icaza, of counsel and on the brief).

McGivney, Kluger, Clark & Intoccia, PC, attorneys for respondent Devils Arena Entertainment, LLC (Colin M. McGivney and Michael J. Mignano, of counsel and on the brief).

Matt Simon Law, attorneys for respondent Industry Groups, LLC[1] (Matthew C. Simon, on the brief).

PER CURIAM

Plaintiff Gabriela Mirtha Tiscornia Sosa appeals from May 10 and June 5, 2024 orders granting defendants Devils Area Entertainment, LLC (DAE) and ABM Industries, Inc. (ABM) summary judgment dismissal of her negligence complaint. We affirm.

Plaintiff alleged she was injured when she slipped and fell on a wet floor at a concert at the Prudential Center on October 16, 2021. Prudential Center is owned by DAE, which contracted with ABM to provide janitorial services. Plaintiff and her daughter had upper-level seats, and approximately ten minutes into the show, a Prudential Center employee offered to move them to seats closer to the stage. The pair agreed, vacated their upper-level seats, went down the steps to the concourse level, and entered the concourse. Plaintiff slipped and fell as she looked for an elevator to take down from the upper level. She claimed she saw a translucent puddle about the size of both of her handprints while she was lying on the ground. She alleged DAE and ABM were negligent because they allowed a dangerous condition to exist, which caused her injury.

---

[1] Respondent Industry Groups, LLC was improperly pled as ABM Industries, Inc.

As for the janitorial services, DAE's contract with ABM stipulated DAE was responsible for determining staffing levels in consultation with ABM. In relevant part, the contract stated, "the entire arena shall be kept in impeccable order at all times." There were no written policies or procedures for pre-event walk-throughs or procedures to be followed during events. However, an ABM representative testified at deposition regarding ABM employee procedure, as follows:

> Before the event[,] we have a checklist to make sure specific items are done[,] and . . . we have the event notes[,] that is[,] a specific request for a specific task for that specific event. During the event[,] we have different people deployed in different areas, and they are constantly patrolling the areas. Usually[,] those event[s] last two[,] . . . three[,] . . . [or] four hours. They continue and patrol the whole area that they are assigned, . . . looking for . . . spills or anything on the floor.
>
> . . . .
>
> During the course of [the] event[,] we have different floors, and . . . we have people doing the patrol of the areas. We have people collecting trash, . . . checking the bathrooms, we have a dispatcher who's the one in charge of dispatch . . . but [on] each floor, . . . one employee or two, depend[ing on what] is required. They are assigned one specific task[,] and that's what they continue doing for the rest of [the] event until it's over.

A-3048-23

When asked about staffing for a concert such as the one plaintiff attended, the ABM representative testified:

> A typical event, it depend[s] on the attendance. So if you want to use the upper concourse as [an] example, in a concert like the one you guys are asking questions [about], . . . the area is divided in two. We have one patrolling one side of the building, and we have another patrolling another side [of] the building. Then we have a trash runner. Then we have two [employees] taking care of restrooms. So those are five on the upper concourse.
>
> . . . .
>
> . . . [The] person . . . doing the patrolling . . . is going from one section to the other section[,] which is one end to the other end, just making sure the floors are clean, nothing [is] on the floor, spills are corrected[,] and checking the restrooms.

Following discovery, ABM and DAE moved for summary judgment. DAE argued it could not have breached the duty of care because it had no actual or constructive notice of the alleged wet floor, let alone how the liquid got onto the floor, its origins, or how long it was present. There were no reports of a spill where the fall occurred and no evidence of a liquid on the floor other than plaintiff's deposition testimony. ABM asserted it did not breach the duty of care to plaintiff because plaintiff did not show it had notice of the wet floor.

A-3048-23

Regardless, its representative provided uncontroverted testimony regarding the staffing and patrols at events.

Plaintiff alleged DAE created the conditions for her fall by moving her seat and permitting the serving of drinks in open containers. Therefore, it was foreseeable that beverages would spill onto the floor and plaintiff did not have to show DAE had notice. Plaintiff claimed the mode-of-operation applied because of the manner of beverage service, and an inference could be drawn that a drink caused the spill leading to her fall. ABM had constructive notice and was therefore liable because it was aware of DAE's practice of allowing open drink containers. Regardless, she claimed a jury should decide whether ABM was negligent for failing to inspect for a spill.

Judge Lisa M. Walsh issued a detailed written opinion analyzing the parties' arguments. She found no evidence ABM was negligent because there was nothing to "show[] how long the liquid was on the floor prior to plaintiff falling, where the liquid came from, how it was created, or if anyone saw it prior to the accident." ABM's representative testified regarding the procedures ABM had to inspect the floor where plaintiff fell, which plaintiff did not refute. An ABM timesheet on the date of the incident showed "five employees were working in the upper concourse at the time of the subject accident." The judge

5

concluded there was "no genuine issue of material fact as to ABM's negligence[,] as they were never aware of the alleged dangerous condition prior to plaintiff falling."

Likewise, there was no genuine issue of material fact regarding DAE's negligence. The judge rejected plaintiff's argument that DAE had rendered a service by offering to change plaintiff's seat. Moreover, based on the evidence in the record, nothing showed DAE had actual or constructive notice of the alleged dangerous condition. The judge observed that, at plaintiff's deposition, she "was unable to state what the liquid was that she slipped on or whether she saw the liquid prior to falling. . . . The record is devoid of any incident reports or information establishing how long the liquid was on the floor or where it came from."

The judge concluded the mode of operation rule did not apply because "the record is devoid of any information establishing what the liquid that plaintiff fell on was, where the liquid came from, when it was created, or how long the liquid was present on the floor." Plaintiff failed to show DAE created the condition on the floor. The judge noted even if the mode of operation applied, "DAE provided sufficient information to show that it did all a reasonable prudent person would do in . . . light of the risk of injury DAE's

6

operation entails." Indeed, DAE had hired ABM to inspect the premises, and the ABM representative had explained "the several procedures and protocols [ABM] had in place on the date" of the incident.

I.

On appeal, plaintiff argues the judge improperly applied the summary judgment standard by substituting her judgment for the jury's factfinding role. Rather than viewing the evidence in the light most favorable to plaintiff, the judge analyzed the facts and DAE's liability under the reasonably prudent person standard. Plaintiff asserts it is the jury's job to decide whether the safeguards defendants had in place during the concert were reasonable.

Plaintiff reiterates because DAE created the conditions that caused her fall, she did not have to establish actual or constructive notice of the dangerous condition. This is because plaintiff would not have been in the area where she fell but for DAE's invitation to change seats. Plaintiff claims that because of this invitation, DAE had "to exercise reasonable care in maintaining the hallway and concourse that plaintiff had to use to arrive there." Based on this sequence of events, whether DAE breached the standard of care should have been left to the jury to decide. Plaintiff also asserts she did not have to establish notice because it was foreseeable that liquid would spill onto the floor due to DAE

7

permitting beverages to be sold in open containers, which customers then walked back to their seats.

Plaintiff claims the judge also erred when she found DAE was not liable because it delegated its responsibilities to ABM. She argues a commercial property owner has a nondelegable duty to invitees to reasonably inspect its property and for failing to correct or warn of defects. DAE created the condition causing liquid to be on the floor and furthered its negligence by failing to inspect the premises for defects after the spill. Plaintiff asserts the judge's ruling sets a dangerous precedent by permitting a business owner to create a dangerous condition and escape liability by claiming a lack of notice.

## II.

Our review of a summary judgment order is de novo and governed by the same standard as the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citation omitted). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). If there is no genuine issue of fact, we then decide whether the trial court's ruling on the

8

law was correct. <u>Walker v. Alt. Chrysler Plymouth</u>, 216 N.J. Super. 255, 258 (App. Div. 1987).

III.

The well-known legal standard for a negligence claim requires a plaintiff to demonstrate: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." <u>Townsend v. Pierre</u>, 221 N.J. 36, 51 (2015) (quoting <u>Polzo v. Cnty. of Essex</u>, 196 N.J. 569, 584 (2008)). In a premises liability case, the defendant owes a plaintiff "a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." <u>Nisivoccia v. Glass Gardens, Inc.</u>, 175 N.J. 559, 563 (2003) (citing <u>Hopkins v. Fox & Lazo Realtors</u>, 132 N.J. 426, 433 (1993)).

A defendant has an affirmative duty "to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." <u>Id.</u> at 563 (citing <u>O'Shea v. K. Mart Corp.</u>, 304 N.J. Super. 489, 492-93 (App. Div. 1997)). To establish a breach of this duty, a plaintiff must demonstrate "that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." <u>Prioleau v. Ky. Fried Chicken, Inc.</u>, 223 N.J. 245, 257 (2015) (quoting <u>Nisivoccia</u>, 175 N.J. at 563).

9

The parties' respective burdens change under the mode of operation doctrine, which applies to "circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." Nisivoccia, 175 N.J. at 563. "The [doctrine] has only been applied to settings such as self-service or a similar component of the defendant's business, in which it is reasonably foreseeable that customers will interact directly with products or services, unassisted by the defendant or its employees," and suffer some injury from products offered for sale. Prioleau, 223 N.J. at 249. Under the doctrine, "a business invitee who is injured is entitled to an inference of negligence and is relieved of the obligation to prove that the business owner had actual or constructive notice of the dangerous condition that caused the accident." Id. at 248 (citing Nisivoccia, 175 N.J. at 563-65).

To invoke the mode of operation doctrine, a plaintiff must prove the dangerous condition arose from the business's self-service operation. Jeter v. Sam's Club, 250 N.J. 240, 262 (2022). "The dispositive factor is . . . whether there is a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." Prioleau, 223 N.J. at 262. The doctrine will not apply, however, where there is no evidence that

"the location in which [the] plaintiff's accident occurred . . . bears the slightest relationship to any self-service component of [the] defendant's business." Id. at 264.

Pursuant to these principles, we affirm substantially for the reasons expressed in Judge Walsh's thorough and well-written opinions. We add the following comments.

At the outset, we question whether the mode of operation rule even applied because DAE did not conduct a self-service operation. The evidence showed arena goers purchased drinks at concessions stands from servers who opened the drinks and handed them to customers.

Regardless, liability under the mode of operation did not exist because there was no evidence of a liquid, where it came from, and if it was ever there, how long it had been on the floor. The unrebutted evidence showed DAE had contracted to keep the arena clean and the ABM representative's testimony explained how ABM went about doing so. Therefore, plaintiff did not establish a nexus between DAE's mode of operation, namely, serving drinks in open containers, having a janitorial services company patrol and monitor the arena floors, and the alleged liquid on the floor. This is what the judge meant when she commented DAE "did all that a reasonably prudent person would do in light

11

of the risk of injury that DAE's operation entails." She was explaining the lack of evidence showing the necessary nexus between DAE's actions and the alleged dangerous condition. The judge was not evaluating the veracity of disputed facts and evidence.

Summary judgment was also properly granted under the ordinary negligence standard. "An invitee seeking to hold a business proprietor liable in negligence 'must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident.'" Id. at 257 (quoting Nisivoccia, 172 N.J. at 563). "The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, L.L.C., 433 N.J. Super. 238, 243 (App. Div. 2013) (alteration in original) (citation omitted).

A defendant has constructive knowledge "when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 602 (App. Div. 2016) (Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)). "The characteristics of the dangerous condition giving rise to the slip and fall" or eyewitness testimony regarding the length of time the conditions existed "may

support an inference of constructive notice about the dangerous condition."

Ibid.

The record does not contain any evidence to support the necessary elements of actual or constructive notice to hold DAE or ABM liable. Plaintiff did not know what she slipped on, let alone establish there was a liquid on the floor. There were no reports of spills or debris. Even if there was liquid on the floor, there was no evidence showing how long it was present or that it was caused by an open container beverage. Plaintiff adduced no factual or expert testimony to refute the evidence of ABM staffing and patrol procedures.

In sum, Judge Walsh correctly concluded plaintiff's complaint could not survive summary judgment. A contrary result would have a jury impermissibly speculate about notice because it would have to speculate whether there was a liquid, its origins, and the duration of its existence on the floor. The remaining arguments raised on appeal lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

13