**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3535-18T2

THOMAS KRAUS,

     Plaintiff-Appellant,

v.

NEW YORK SPORTS
CLUB and ADVENTURES
IN RECREATION, INC.,

     Defendants-Respondents,

and

YORK FITNESS,

     Defendant.

_____

          Argued telephonically April 28, 2020 –
          Decided June 11, 2020

          Before Judges Yannotti, Hoffman and Currier.

          On appeal from the Superior Court of New Jersey, Law
          Division, Bergen County, Docket No. L-5579-16.

          Greg D. Shaffer argued the cause for appellant.

Stephanie M. Imbornone argued the cause for respondents (Gordon Rees Scully Mansukhani LLP, attorneys; Peter George Siachos and Eric Thom Evans, of counsel and on the brief; Stephanie M. Imbornone, on the brief).

PER CURIAM

Plaintiff appeals from a June 22, 2018 Law Division order granting the summary judgment dismissal of his complaint against defendants New York Sports Club (NYSC) and Adventures in Recreation, Inc. (AR).[1]  Plaintiff also appeals from an August 17, 2018 order denying reconsideration of an earlier order, which denied his motion to amend his complaint to add York Barbell (YB) and Zurich Insurance (Zurich) as defendants and to extend discovery.  We affirm.

I

On July 28, 2014, plaintiff sustained an injury while using a deluxe stirrup handle (the handle) attached to a cable crossover machine at NYSC.  While performing an inclined fly exercise using moderate weight, plaintiff claims a screw from the handle became dislodged "mid-repetition," while on his third or fourth repetition.  Plaintiff recounted, "[A]s soon as the handle came apart[,]

---

[1]  The record indicates that AR does business as NYSC.

. . . . my arm went violently across my body . . . [I]mmediately I knew something was wrong . . . . I was in quite a bit of pain."

When asked if he inspected the handle before using it, plaintiff responded:

> [G]enerally when I work out I give an inspection of what I'm using. I want to make sure, you know, there was no out-of-order signs, there was no indication that this was, that this handle was faulty or broken or anything like that. When I grabbed it[,] it held, and in the middle of the set it failed, and that's what caused the problem.

Plaintiff's medical expert opined that the sudden failure of the handle caused plaintiff to sustain a partial tear of his right rotator cuff and related injuries. In December 2016, plaintiff underwent a right shoulder arthroscopy to repair the damage caused by the failure of the handle.

After he sustained his injury, plaintiff brought the broken handle to Nate Tubach, the fitness manager for NYSC, and filled out an accident report. He also took a picture of the broken handle.

During Tubach's deposition, the following colloquy occurred:

> Q: Have you ever witnessed or experienced a spontaneous failure of . . . any cable machine handle?
>
> A: No.
>
> . . . .

3

Q: So the question is, what prompted you to order these six handles [at issue]?

A: We needed new handles. And when I ordered them, they didn't have the ones I wanted, and so I tried these out. I hadn't used them before. I [have] seen them, but I never had any issues with them.

Tubach confirmed the handle at issue was brand new because he placed an order for new handles on June 18, 2014; upon receiving the order, he placed the new handles in the areas of the gym where members typically used them. A month after plaintiff's accident, a similar handle came loose; however, Tubach maintained he was unaware of the handles at issue causing any problem prior to plaintiff's injury. After the second handle came loose, NYSC removed the product from the gym. According to Tubach, employees regularly walked through the gym looking for any visible equipment damage.

On July 27, 2016, plaintiff filed a complaint against NYSC, AR, and York Fitness (YF). Plaintiff asserted NYSC and AR negligently and carelessly allowed "a dangerous and hazardous condition to exist" on its property or "failed to warn of same," causing plaintiff's injury. Additionally, plaintiff asserted a

4

claim against YF[2] pursuant to the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1 to -11.

Plaintiff's liability expert, Robert J. Nobilini, Ph. D., issued a report on April 3, 2018. Based upon his review and investigation, Nobilini provided the following opinions: 1) "the screw that came out of the handle was sticking out of the handle by at least [one-half] inch"; 2) the screws on the stirrup-style handle were loose "for some time" prior to the incident; 3) "if the third bushing found at the time of the incident was from a prior, failed stirrup-style handle, then NYSC had notice that the screws were subject to loosening during use"; 4) NYSC failed to properly "inspect and maintain the subject stirrup handle" and this was a cause of plaintiff's injuries; and 5) if NYSC had properly inspected the subject handle assembly, it would have discovered "the loose screws" and prevented plaintiff's accident.

Notwithstanding three previous discovery extensions, on April 3, 2018, plaintiff filed a motion for leave to file an amended complaint to add YB as a defendant, to extend discovery by ninety days, and to adjourn arbitration.

---

[2] The record indicates that default was entered against YF on January 9, 2017. Following a proof hearing on February 9, 2019, the court entered a default judgment against YF in the amount of $225,000.

Plaintiff filed the motion less than three weeks before the discovery end date, after the court scheduled the case for arbitration.

On April 27, 2018, the court denied plaintiff's motion. Relying on <u>Vitti v. Brown</u>, 359 N.J. Super. 40 (Law Div. 2003), and <u>Murray v. Plainfield Rescue Squad</u>, 418 N.J. Super. 574 (App. Div. 2001), the court found no exceptional circumstances existed to grant the requested relief, noting plaintiff's failure to provide a reason for the delay in adding YB when the alleged cause of injury "was [a] failure of handle grips and [the] manufacturer was known."

Following arbitration, plaintiff filed a demand for trial de novo. Two weeks later, NYSC and AR filed a motion for summary judgment. After hearing oral argument on June 22, 2018, the motion judge granted summary judgment in favor of NYSC and AR. The judge found that "no reasonable jury" could find NYSC and AR had "actual or constructive notice based upon the testimony of plaintiff and his expert." The judge noted that plaintiff, an experienced weightlifter, claimed he inspected the handle before he used it, and said "there was no indication" that the "handle was faulty or broken," until it broke "mid-repetition." The judge further explained:

> Plaintiff argues that there is some dispute over whether the [handles] examined by his expert were the [handles] he used at the time of the accident, or whether the [handles at] issue [were] actually that new, because the

[handles] were discarded by NYSC following the incident. The court concludes it is of no moment here. The backing out mechanism described by plaintiff's expert is the same as it manifests itself, i.e. a screw sticking out on[e]-half inch [of the bottom of the handle]. The plaintiff did not see a screw sticking out one-half inch when he inspected it. Plaintiff's testimony is unequivocal that his pre-use inspection revealed no issues. As plaintiff's expert cites no industry standards in his report, there is no evidence before the court (or available to a jury) as to what NYSC was required to do with regard to inspecting its equipment.

On August 1, 2018, plaintiff filed a motion seeking 1) reconsideration of the April 27, 2018 order denying his motion to amend the complaint; 2) leave to file an amended complaint to add Zurich and YB; 3) to reopen and extend discovery for ninety days for exceptional circumstances, pursuant to R. 4:24-1(c) and; 4) to adjourn the proof hearing scheduled for August 3, 2018.

In his motion for reconsideration, plaintiff claimed that Zurich advised it insured YF, as a subsidiary of YB. Plaintiff asserted that YB "would be answering on behalf of [YF], and Zurich would pick up coverage for [YB]." However, plaintiff acknowledged Zurich later stated it was not representing YF, and Zurich would not appear for the upcoming proof hearing. Plaintiff admitted to searching YF's website, which revealed that YF "is the trading name of 'York

7

Barbell (UK) Ltd' . . . . A google search of 'deluxe stirrup handle', the subject handle, indicates that [YB] is the manufacturer."

On August 17, 2018, the judge denied plaintiff's motion for reconsideration. The judge found plaintiff failed to act diligently in discovery and his arguments lacked merit. The judge reasoned the "information secured in the March 2018 deposition was readily available if the discovery had been handled timely and appropriately." Additionally, the judge noted the facts of the case reasonably suggested a products liability claim before plaintiff filed his initial complaint. The judge concluded the lack of "reasonable diligence" in completing discovery or identifying "the obvious potential [product liability] claim is not a basis for reconsideration and does not constitute exceptional circumstances."

On September 6, 2018, plaintiff filed a second motion for reconsideration requesting the court: 1) vacate the June 22, 2018 order that granted summary judgment in favor of AR and NYSC; 2) vacate the August 17, 2018 order denying plaintiff's motion for reconsideration; 3) extend discovery for ninety days; and 4) schedule a trial date.

On September 28, 2018, following oral argument, the judge denied plaintiff's second motion for reconsideration. The judge explained, "This is the

second motion for reconsideration for which there is no provision in the Rules of Court. Motion denied essentially for the reasons set forth in the original order denying reconsideration."

Plaintiff initially filed a notice of appeal on October 11, 2018; however, at that point, plaintiff's claim against YF remained unadjudicated. It is "well settled that a judgment, in order to be eligible for appeal as a final judgment, must be final as to all parties and all issues." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.2.2 on R. 2:2-3 (2020); see Silviera-Francisco v. Bd. of Educ., 224 N.J. 126, 136 (2016). As a result, plaintiff withdrew his appeal on November 12, 2018. After plaintiff completed proceedings against YF, plaintiff filed the appeal under review, seeking to challenge the June 22, 2018 order granting summary judgment in favor of NYSC and AR, and the August 17, 2018 order denying plaintiff's motion for reconsideration.

II

When reviewing an order granting summary judgment, we "employ[] the same standards governing the trial court." Lee v. Brown, 232 N.J. 114, 126 (2018) (citing Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349-50 (2016)). Rule 4:46-2(c) states that summary judgment should be granted where

the motion record "show[s] that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

The rule also states that "[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. Furthermore, "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

Assertions that are unsupported by evidence "[are] insufficient to create a genuine issue of material fact." Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015) (alteration in original) (quoting Heyert v. Taddese, 431 N.J. Super 388, 414 (App. Div. 2013)). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun

<u>Nat'l Bank</u>, 374 N.J. Super. 556, 563 (App. Div. 2005)). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." <u>Brill</u>, 142 N.J. at 523.

In order to establish a prima facie case of negligence, a plaintiff must establish: (1) a duty of care; (2) breach of that duty; (3) proximate cause; and (4) damages. <u>Filipowicz v. Diletto</u>, 350 N.J. Super. 552, 558 (App. Div. 2002). "Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." <u>Hopkins v. Fox & Lazo Realtors</u>, 132 N.J. 426, 439 (1993). Courts should consider "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." <u>Ibid.</u>

"Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." <u>Nisivoccia v. Glass Gardens, Inc.</u>, 175 N.J. 559, 563 (2003). "The duty of due care to a business invitee includes an affirmative duty to inspect the premises and 'requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating

conditions that would render the premises unsafe.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 601 (App. Div. 2016) (quoting Nisivoccia, 175 N.J. at 563).

"Owners of premises are generally not liable for injuries caused by defects of which they had no actual or constructive notice and no reasonable opportunity to discover." Id. at 601-02. "For that reason, '[o]rdinarily an injured plaintiff . . . must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident.'" Id. at 602 (alternation in original).

Constructive knowledge is established with proof that the condition existed "for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." Ibid. (quoting Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)).

According to plaintiff's expert, NYSC and AR had actual or constructive notice of the defects in the handle because a picture that plaintiff took of the handle showed a total of three bushings. Because the subject handle contained only two bushings, he opined the third bushing meant a similar handle was previously broken. Plaintiff's expert further opined the handle at issue was loose "for some time." We find these opinions constitute mere speculation,

unsupported by competent evidential material in the record. Hoffman, 404 N.J. Super. at 426.

After reviewing the entire record, including the testimony of plaintiff and the opinions of his expert, the judge found that there was no genuine issue of material fact as to whether NYSC and AR had actual or constructive knowledge of any problem with the handle. Additionally, the judge noted that plaintiff was an experienced weightlifter, he inspected the handle before he used it, and he acknowledged there was no indication of a problem with the handle while using it during his first few repetitions. Lastly, the judge emphasized that plaintiff's expert failed to rely on an industry standard in rendering his opinion; therefore, it was unclear exactly what steps NYSC and AR should have taken to prevent plaintiff's injury.

Plaintiff's testimony reveals that the handle was in good condition after he inspected it, was in good condition on the first two to three repetitions, and then spontaneously broke on the third or fourth repetition. See Ranalli v. Edro Motel Corp, N.J. Super. 621, 624 (App. Div. 1997) (dismissing plaintiff's premises liability claim due to a defective frying pan in part because "plaintiff testified that he inspected the Teflon pan prior to its use and found nothing amiss."). Plaintiff's examination of the handle, and finding no problems, effectively

refutes the claim that NYSC and AR had constructive notice of any problem with the handle.

Plaintiff's expert opined that a screw would have been visible and sticking out of the handle for some time. His statement completely ignores the testimony of plaintiff, who recounted not seeing any problem with the handle. Where an expert's findings are not supported by proper factual evidence, it constitutes a net opinion. Townsend v. Pierre, 221 N.J. 36, 58-59 (2015).

An expert's opinion "is excluded if it is based merely on unfounded speculation and unquantified possibilities." Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997) (quoting Vuocolo v. Diamond Shamrock Chem. Co., 240 N.J. Super. 289, 300 (App. Div. 1990)). Because a jury may give significant weight to expert testimony, "a trial court must ensure that an expert is not permitted to express speculative opinions or personal views that are unfounded in the record." Townsend, 221 N.J. at 55. "[A]n expert's bare opinion that has no support in factual evidence or similar data is a mere net opinion which is not admissible and may not be considered." Pomerantz Paper Corp., 207 N.J at 372.

While the judge did not rule that plaintiff's expert opinion constituted a net opinion, the judge found plaintiff's contradictory statements material in granting summary judgment. In addition, the judge noted that plaintiff's expert

failed to cite any industry standards regarding what NYSC "was required to do with regard to inspecting its equipment."

We similarly find that defendants did not have a duty to inspect the equipment after every use; nevertheless, Tubach's testimony indicated that NYSC employees regularly walked throughout the gym looking for broken equipment. Plaintiff presented no evidence to refute this contention. There is also no evidence in the record to suggest how long the alleged defect in the handle existed to provide evidence of constructive notice. Plaintiff simply provided no evidence of a problem between the date Tubach purchased and installed the subject handle, and the date of plaintiff's injury.

While NYSC and AR had a duty to keep the premises safe, there is no indication that they had either constructive or actual knowledge of a defect in the subject handle. Because the absence of evidence of "actual or constructive notice . . . is fatal to plaintiff's claim . . ." Arroyo, 433 N.J. Super. at 243, the judge did not err in granting summary judgment in favor of NYSC and AR.

Nor did the motion judge err in denying plaintiff's motion for reconsideration, which sought reconsideration of the court's decision to deny leave to file an amended complaint to add Zurich and YB as additional defendants. When a trial court denies a party's motion for reconsideration, a

15

reviewing court shall overturn the denial only in the event there was an abuse of discretion by such court. Marinelli v. Mitts & Merrill, 303 N.J. Super. 61, 77 (App. Div. 1997). In determining whether such an abuse has taken place, a reviewing court should be mindful that reconsideration is not to be utilized by a party just because of their "dissatisfaction with a decision of the [c]ourt." Capital Fin. Co. of Delaware Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

"Reconsideration should be utilized only for those cases [that] fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria, 242 N.J. Super. at 401). Trial courts should grant motions for reconsideration "only under very narrow circumstances." Fusco v. Board of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002).

Discovery was extended three times and lasted 542 days. Plaintiff filed his initial motion 522 days into discovery. Notably, plaintiff conceded an

internet search revealed that YB is the parent company of YF and YB manufactured the handle at issue. The record contains no reason for delaying this search until almost the end of the approximately eighteen-month discovery period. Because plaintiff essentially conceded that information on YB, as the parent company of YF, was easily accessible public information, plaintiff failed to show that the judge relied on an incorrect or irrational basis or failed to appreciate probative, competent evidence. Bahr, 295 N.J. Super. at 384.

Any arguments not specifically addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3535-18T2