**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1894-19

JOSEPH DONATUCCI,

     Plaintiff-Appellant,

v.

ATLANTICARE HEALTH
SERVICES[1] and ATLANTICARE
REGIONAL MEDICAL
CENTER,[2]

     Defendants-Respondents.

_____

Submitted December 9, 2020 – Decided March 17, 2021

Before Judges Sumners and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0232-18.

Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, of counsel and on the brief).

---

[1] AtlantiCare Health Services was incorrectly pleaded as AtlantiCare d/b/a William L. Gormley AtlantiCare HealthPlex.

[2] AtlantiCare Regional Medical Center was incorrectly pleaded as Atlantic City Medical Center.

Jill R. O'Keeffe, attorney for respondent.

PER CURIAM

Plaintiff Joseph Donatucci appeals from the trial court's order granting summary judgment dismissal of his trip-and-fall complaint. After picking up medication from a medical facility owned by defendants AtlantiCare Health Services and AtlantiCare Regional Medical Center, plaintiff tripped on a broken portion of sidewalk while walking back to his car. Having considered the parties' arguments in light of the record and applicable principles of law, we reverse summary judgment because plaintiff has presented sufficient evidence, albeit disputed, that defendants knew their sidewalk presented a danger to visitors but failed to take reasonable steps to remediate the condition.

We view the facts in a light most favorable to plaintiff as the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On March 1, 2017, plaintiff's daughter, Miranda Donatucci, drove him to the AtlantiCare HealthPlex (the HealthPlex) to pick up medication. They parked in the facility's parking lot located in front of the building. While plaintiff went inside, his daughter stayed in the car. After exiting the building, plaintiff tripped while walking back to the vehicle. Plaintiff suffered a torn rotator cuff in his

right shoulder, disc bulging at multiple levels in the thoracic spine, disc herniations in the cervical spine, and lumbar radiculopathies.

Miranda saw her father fall but could see only the top half of his body go down because her view was obstructed by other cars. She immediately went to tend to him. While on the ground, plaintiff noticed his foot was next to a broken seam between two sections of the sidewalk, which caused a lip in the cement. Miranda took photos of the broken cement later that day. Plaintiff returned about two months later to take additional photos, at which point the pavement in the area had been replaced.

Plaintiff and his daughter testified that shortly after the fall, a female AtlantiCare employee came outside to help. Neither remembered her name or position, but both testified the employee told them that this was not the first time a visitor had fallen on the facility's uneven sidewalk. Plaintiff further testified the employee told him defendants had received similar complaints of visitors falling in the same location since trees next to the sidewalk were removed, causing the pavement to become uneven. Plaintiff described the employee as a woman in her forties with short brown hair and believed she may have been a doctor whose name began with a "J," though he was unsure. When asked whether the employee was Dr. Jill Rodgers, plaintiff responded that he did not

3

know. Miranda testified that she vaguely remembered trees adjacent to the subject sidewalk from past trips to the HealthPlex, that were not there the day her father fell.

During his deposition, plaintiff was shown a series of photos his daughter took after the fall. He testified the photos showed the general area but was unable to determine whether they depicted the exact location of the fall. Later, plaintiff was shown the same photos by his attorney, this time with circles around a particular portion of broken cement and was asked if they depicted the condition that caused him to fall. Plaintiff answered affirmatively. He explained that while lying on the ground, he observed the broken cement depicted in the photo next to his foot.

Robert Pennese, a security guard at the HealthPlex who responded to plaintiff's fall, testified that a male was assisting plaintiff when he arrived at the scene. He was not sure if the person was an AtlantiCare employee. Pennese explained that defendants have two protocols for a fall event. If the person is on the ground and in distress, security will call 911 immediately. If the person is able to stand, however, employees take the visitor inside where they are assessed by a physician. Because plaintiff was standing when he arrived, Pennese retrieved a wheelchair and helped him get into the facility. Once inside,

4

Dr. Rodgers assessed plaintiff's injuries. Pennese testified that he observed plaintiff and Dr. Rodgers have a conversation, but did not hear any discussion of trees, uneven sidewalk, or prior complaints.

After plaintiff left the premises, Pennese photographed the area where he believed the fall occurred and drafted an investigation report but was unable to locate any hazard or condition that would cause someone to trip. Pennese denied observing anything similar to the photos taken by Miranda. He also testified that there had never been any trees adjacent to the sidewalk in the area plaintiff fell, and that he was not aware of any similar incidents occurring in that location.

Pennese explained that security guards perform rounding, which is an inspection of the HealthPlex interior and exterior facilities, including parking lots and sidewalks. If a hazardous condition is discovered, the security guard will either note it in a computer program that logs rounding reports or directly inform the building director, Sandy Festa. The rounding reports from February 1, 2017, through April 28, 2017, as well as the investigation reports related to the sidewalks and exterior of the HealthPlex over the previous seven years were produced during discovery. Inspection of the rounding and investigation reports does not reveal any evidence of a hazardous condition in the relevant area.

A-1894-19

Sandy Festa certified that a portion of the HealthPlex was remodeled in 2017, to accommodate the facility's Medicare Program of All-Inclusive Care for the Elderly. The sidewalk was replaced in the fall 2017, as part of this remodeling effort. Festa also certified that she was unaware of any issues or defects with that particular sidewalk prior to its replacement.

On August 13, 2019, defendants moved for summary judgment arguing plaintiff failed to produce any evidence of a dangerous condition on the HealthPlex premises or that defendants had actual or constructive notice. The trial judge found the sidewalk was in a reasonably safe condition on the day of plaintiff's fall. The judge acknowledged the broken cement depicted in plaintiff's photos but found that the condition was first brought to defendants' attention on March 1, 2017.

Relying on Pennese's testimony, as well as the rounding and investigation reports, the trial judge found defendants did not have actual or constructive notice of the sidewalk's condition prior to March 1, 2017. The judge found the evidence related to the alleged trees was not competent. However, even if there had been trees as plaintiff suggested, expert evidence regarding negligence in the trees' removal, or measures taken after the removal, would be required to

establish defendants' breach of duty. Accordingly, the trial judge granted defendants' motion for summary judgment. This appeal ensued.

On appeal, plaintiff argues the trial judge erred in deciding the case on summary judgment because his answers to discovery, deposition testimony, and pictures are sufficient to make a prima facie showing of a dangerous condition on defendants' premises. He further argues that a reasonable jury could find defendants were on notice of the dangerous condition based on the investigation reports describing other falls occurring in exactly the same manner around the property. Plaintiff also points to the sidewalk's replacement shortly after the fall as evidence from which a jury could conclude that defendants knew the walkway was unsafe.

We review a grant of summary judgment using the same standard that governs the trial judge's decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217

A-1894-19

N.J. at 38); see also R. 4:46-2(c).  "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande, 230 N.J. at 24 (quoting Bhagat, 217 N.J. at 38).  We owe no special deference to the motion judge's legal analysis.  RSI Bank, 234 N.J. at 472 (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016)).

In order to establish a prima facie case of negligence a plaintiff must establish: (1) a duty of care; (2) breach of that duty; (3) proximate cause; and (4) damages. Filipowicz v. Diletto, 350 N.J. Super. 552, 558 (App. Div. 2002). "Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003) (citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993)).  "The duty of due care to a business invitee includes an affirmative duty to inspect the premises and 'requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe.'"   Troupe v. Burlington Coat Factory

8

Warehouse Corp., 443 N.J. Super. 596, 601 (App. Div. 2016) (quoting Nisivoccia, 175 N.J. at 563).

"Owners of premises are generally not liable for injuries caused by defects of which they had no actual or constructive notice and no reasonable opportunity to discover." Id. at 601-02. "For that reason, '[o]rdinarily an injured plaintiff . . . must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident.'" Id. at 602 (alternations in original) (quoting Nisivoccia, 175 N.J. at 563).

Applying these principles, we conclude summary judgment was improper in this case. As an invitee, defendants owed plaintiff a duty to provide a safe environment while picking up his medication. Plaintiff presented evidence of a dangerous condition on defendants' premises existing on March 1, 2017, including photographs of a broken seam separating two portions of sidewalk and testimony describing the lip which caused him to fall. Plaintiff alerted defendants of the fall, he was assessed by the facility's staff, and an incident report was prepared. Defendants' employee allegedly informed plaintiff that visitors have fallen in the same manner at the same location. While the content of the exchange between plaintiff and Dr. Rodgers is in dispute, Pennese's

testimony confirms the two spoke. Viewing the evidence in the light most favorable to plaintiff, we find a reasonable jury could conclude defendants breached their duty to provide invitees with a safe environment by knowingly allowing a tripping hazard to exist on the premises. Whether Dr. Rodgers actually made the alleged statements is a question of fact that must be decided by a jury. The trial judge rejected the testimony regarding the presence of trees in the area as incompetent. We disagree.

N.J.R.E. 803(b)(4) provides that a vicarious statement is not excluded by the hearsay rule if it was made "by the [party's] agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]" "All that is required for admission under N.J.R.E. 803(b)(4) is that the statement offered against a party be 'a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.'" Spencer v. Bristol-Meyers Squibb Co., 156 N.J. 455, 463 (1998) (quoting N.J.R.E. 803(b)(4)).

To determine if a statement qualifies as a vicarious admission, the proponent must sufficiently identify the speaker. See Beasley v. Passaic County, 377 N.J. Super. 585, 603-04 (2017). Identification is important for two reasons. First, without knowing the declarant's role within a company, the court cannot

10

determine whether the statement was within his or her employment's scope. Ibid. Second, the declarant must be identified in order to be subject to cross-examination. Id. at 603.

Notwithstanding plaintiff's inability to name Dr. Rodgers, the record clearly demonstrates that his description was sufficient to satisfy both purposes of the identification requirement. Id. at 603-04. Pennese's recitation of company protocol requiring a doctor, in all non-emergent situations, to assess visitors who fall on defendants' premises, places Dr. Rodgers' alleged statements squarely within the scope of her employment. She was the one ordered to assess visitors that fell on defendants' property on March 1, 2017, and allegedly made statements regarding those duties while working. Because "a principal is deemed to know facts that are known to its agent[,]" defendants are charged with knowledge of the alleged prior incidents. NCP Litig. Trust v. KPMG LLP, 187 N.J. 353, 366 (2006) (citing Restatement (Third) of Agency § 5.03 (Tentative Draft No. 6, 2005)). As demonstrated by the deposition transcript, plaintiff's description was also sufficient to enable defense counsel to immediately identify the employee. Defendants could have obtained her testimony but did not. Accordingly, Dr. Rodgers' alleged statements are admissible. See Spencer, 156 N.J. at 463. When those statements are considered, a dispute of material fact

11

arises as to whether a dangerous condition existed and whether defendants had notice.

We also disagree that expert testimony would be required to prove the trees were negligently removed. The issue is not the manner by which the alleged trees were taken out, but whether a dangerous condition existed. Plaintiff's testimony and photographs of the sidewalk demonstrate sufficient deviation to constitute a tripping hazard, regardless of the level of care taken in the alleged tree removal. Because a rational juror could conclude that the difference in the level of the pavement created a substantial risk of injury, and hence a dangerous condition, we do not believe that expert evidence is necessarily required. For purposes of summary judgment, plaintiff's photographs, testimony, and Dr. Rodgers' alleged statements provide enough evidence of a dangerous condition to withstand dismissal. Similarly, Pennese's testimony confirming the exchange between plaintiff and Dr. Rodgers, as well as her alleged statements, provide sufficient evidence of defendants' notice of the dangerous condition to withstand dismissal before a trial.

Reversed and remanded for trial.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-1894-19